# ALVIN THOMPSON *v.* STATE OF MARYLAND

[No. 329, September Term, 1977.]

*Decided January 12, 1978.*

The cause was argued before THOMPSON, MENCHINE and LOWE, JJ.

*Arnold M. Zerwitz, Assigned Public Defender,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Samuel Brave, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Alvin Thompson, the appellant, was convicted by a jury of murder in the second degree and use of a handgun in the commission of a crime of violence. Judge Basil Thomas, sitting in the Criminal Court of Baltimore, imposed concurrent sentences of twenty years and five years, respectively. Thompson raises the following questions: (1) whether his reprosecution following a mistrial constituted double jeopardy, (2) whether there was sufficient evidence to support the convictions, and (3) whether the trial judge

abused his discretion in denying a motion for a mistrial. The facts necessary for the opinion will be stated in the discussion of the three contentions.

## I  Double Jeopardy

The appellant was brought to trial on January 3, 1977. After the jury was sworn the prosecutor, in his opening statement to the jury, made the following comment concerning certain defense witnesses:

> "The police are summoned. Officer Shannahan arrives within a half hour or so. The Homicide Squad is on the scene. They gather all the witnesses they can find, including Fannie Parker, the lady I just described, the names of these witnesses that you were asked whether you knew on voir dire. George Ford, Wallace Williams — George Ford, 1800 Calvert Street. Wallace Williams, 2208 East North Avenue. Clarissa Bailey of 1330 Aisquith Street. None of these people, not one of them, ever approached the officer —"

The defense immediately objected and subsequently moved for a mistrial on the grounds the prosecutor had no way of knowing what the testimony of the witnesses would be and, therefore, the comment was both prejudicial and improper. The trial judge granted the motion over the objection of the State. After the appellant was rearraigned, a new jury was impaneled and the trial commenced. The appellant maintains that the mistrial was attributable to prosecutorial misconduct and, as such, the double jeopardy clause operated as a bar to retrial.

Initially we are faced with the problem that a claim of double jeopardy was not raised during the trial. Under Rule 1085 this Court is not required to decide questions not presented below unless they concern the jurisdiction of the Court. The appellant argues the question is properly before the Court as double jeopardy is jurisdictional in nature. We assume a claim of double jeopardy is jurisdictional solely for the purpose of this appeal. *Tate v. State,* 236 Md. 312, 203 A.

2d 882 (1964); *Johnson v. State,* 3 Md. App. 105, 238 A. 2d 286 (1968), *cert. denied,* 250 Md. 732.

Although the double jeopardy clause is designed to protect the defendant against multiple punishments or repeated prosecutions for the same offense, *United States v. Dinitz,* 424 U. S. 600, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976), a request by a defendant for a mistrial ordinarily removes any bar to reprosecution even though the motion was necessitated by prosecutorial or judicial error. *Lee v. United States,* 432 U. S. 23, 97 S. Ct. 2141, 53 L.ED.2d 80 (1977); *United States v. Dinitz, supra.* This rule is not absolute and where a mistrial is the product of prosecutorial or judicial overreaching, the double jeopardy clause prevents a retrial. *Lee v. United States, supra; United States v. Jorn,* 400 U. S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971). The exact boundaries of prosecutorial overreaching, necessary to bar retrial, have not been specifically delineated by the Supreme Court. Other courts which have considered the point generally hold that prosecutorial error attributable to negligence does not amount to overreaching, *People v. Baca,* Colo., 562 P. 2d 411 (1977), while intentional misconduct calculated to gain a more favorable chance for conviction or to abort a trial that is going badly prevents reprosecution. *United States v. Kessler,* 530 F. 2d 1246 (5th Cir. 1976). The appellant argues that prosecutorial overreaching is not confined to intentional misconduct but encompasses gross negligence as well. *Commonwealth v. Bolden,* 472 Pa. 602, 373 A. 2d 90 (1977). Although in *Bolden,* the Court noted that it is unclear from the decisions of the Supreme Court whether overreaching is limited to intentional misconduct or whether it extends to gross negligence on the part of the prosecutor or judge, it concluded gross negligence was encompassed in the term after an examination of the purposes underlying the double jeopardy clause. The Court stated:

> "A defendant forced to request a mistrial by conduct which conspicuously fails to satisfy professional standards should not be required to bear the heavy burdens incident to reprosecution." 373 A. 2d at 109.

Although neither the Court of Appeals nor this Court has specifically addressed this issue, we need not define the boundaries of prosecutorial overreaching in this case because no matter what standard we apply the appellant has failed to demonstrate the existence of any conduct which would invoke the bar of double jeopardy.

The statement in question was made by the prosecutor in his opening statement to the jury. The purpose and scope of an opening statement was succinctly stated by the Court of Appeals in *Wilhelm v. State,* 272 Md. 404, 326 A. 2d 707 (1974):

> "The primary purpose or office of an opening statement in a criminal prosecution is to apprise with reasonable succinctness the trier of facts of the questions involved and what the State or the defense expects to prove so as to prepare the trier of facts for the evidence to be adduced. While the prosecutor should be allowed a reasonable latitude in his opening statement he should be confined to statements based on facts that can be proved and his opening statement should not include reference to facts which are plainly inadmissible and which he cannot or will not be permitted to prove, or which he in good faith does not expect to prove. An opening statement by counsel is not evidence and generally has no binding force or effect. To secure a reversal based on an opening statement the accused is usually required to establish bad faith on the part of the prosecutor in the statement of what the prosecutor expects to prove or establish substantial prejudice resulting therefrom." 272 Md. at 411-412.

Although the prosecutor in an attempt to anticipate and discredit the testimony of defense witnesses was venturing beyond the facts which he planned to prove, the statement standing alone does not demonstrate intentional misconduct. The appellant attempts to place the action of the prosecutor in the category of intentional misconduct by arguing that opening statements are frequently prepared in advance of trial, and, as one of the witnesses named by the prosecutor

had been questioned by the police, he must have known his statement was false. We do not think these facts, by themselves, are sufficient to create a question of intentional misconduct nor can we say on the record before us the statement was so negligent that it conspicuously failed to satisfy professional standards.

## II Sufficiency of the Evidence

The appellant's second contention is that the evidence was insufficient to sustain the conviction. During the course of the trial the State produced several witnesses who had observed the shooting. These eyewitnesses testified, in essence, that the appellant approached the victim with a gun in his hand, made some remarks to him, hit him in the head with the gun, and then shot him. In his defense the appellant asserted the victim had made threatening gestures and his actions were taken as the result of these threats. According to the appellant, the gun was discharged accidentally during the course of mutual combat. Once this issue of mitigation was generated he argues the State was required to prove beyond a reasonable doubt the killing was without justification or excuse under *Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975), and *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), *aff'd.* 278 Md. 197, 362 A. 2d 629 (1976). The evidence was insufficient, he argues, because even if the jury disbelieved his testimony there was no evidence to show the lack of an intent to fight on the part of the victim and an inference of malice from the use of deadly force impermissibly relieves the State of its burden of proof under *Mullaney* and *Evans.* We fail to see any merit in this argument. *Mullaney* does not affect permitted inferences of fact. Such inferences do not shift the burden of proof unless they lack a rational connection between the facts established and the facts to be inferred. *See Jones v. State,* 37 Md. App. 511, 378 A. 2d 9 (1977), *Evans v. State, supra.* In the instant case there was ample testimony from which the jury could infer an intent to kill the victim and the absence of any mitigating circumstances.

III   Denial of Mistrial

In the course of closing argument during the second trial the prosecutor stated to the jury:

"That's the defendant's testimony, because the judge isn't even going to instruct you self-defense. I might as well inform you of that now. Put self-defense out of the picture."

. . .

"[T]he judge is not going to instruct you on self-defense, the reason is, there is no evidence of self-defense."

Defense counsel objected to this statement and asked for a mistrial. On appeal the appellant argues the trial judge abused his discretion in denying the motion. We disagree. The Court of Appeals outlined the standard for the granting of a mistrial in *Wilhelm v. State, supra*:

"A request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial. *Basiliko v. State,* 212 Md. 248, 260-61, 129 A. 2d 375, 381 (1957). The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant."

. . .

"The trial court, in the exercise of its discretion, should declare a mistrial only where there is 'manifest necessity for the act,' *Cornish v. State,* 272 Md. 312, 322 A. 2d 880; it should never be granted for light and transitory reasons which do not result

in any real prejudice to the accused." 272 Md. 429-430.

Assuming the statements of the prosecutor were improper, there was no manifest necessity for a mistrial. Indeed, we do not see how the appellant could possibly be prejudiced by the remark. Prior to closing argument, both parties agreed that there would be no instructions given on the issue of self-defense. Rather, instructions would be limited to the issue of excusable homicide. The appellant's objection to the argument was predicated on the basis the prosecutor's comments might mislead the jury into thinking neither issue was in the case. The trial judge cautioned the prosecutor to desist from further reference to the issue of self-defense and subsequently instructed the jury on the issue. We think these precautions were more than sufficient to correct the error, if any, in the prosecutor's argument.

*Judgments affirmed.*
*Appellant to pay the costs.*